UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daina Maire DuBois, f/k/a,
Daina Maire Hewlett and
Dean Roger DuBois,
On Behalf Of Themselves and
All Others Similarly Situated,

Civ. File No. 00-1446 (PAM/SRN)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

Ford Motor Credit Company,

Defendant.

---

This matter is before the Court on Defendant's Motion to Dismiss. Defendant contends that Plaintiffs' Complaint fails to state claims upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court grants Defendant's Motion.

**BACKGROUND**

Plaintiffs, on behalf of themselves and all others similarly situated, allege that Defendant Ford Motor Credit Company ("FMCC") attempted to collect money from consumers in violation of the Bankruptcy Code, 11 U.S.C. § 101 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiffs have not yet requested class certification.

In May 1995, the named Plaintiffs, Daina and Dean DuBois, leased a Ford F150

FILED JAN 19 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENT'D JAN 19 2001
DEPUTY CLERK

pickup truck from Tousley Ford in White Bear Lake, Minnesota. The lease on the vehicle was financed by FMCC, and Plaintiffs made monthly payments to FMCC of $413.77.

On March 15, 1996, Plaintiffs filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code. As part of their bankruptcy filings, Plaintiffs listed the vehicle lease under Schedule G, Executory Contracts and Unexpired Leases, and represented that they would continue to make payments on the lease directly to FMCC. (Nuss Aff. Ex. 1 (Schedule G).) Plaintiffs submitted a payment on the lease to FMCC in April 1996, after they filed for bankruptcy. (Compl. ¶ 16.)

On May 8, 1996, FMCC sent a letter to Plaintiffs' bankruptcy counsel. (Compl. Ex. A.) This letter stated that FMCC had learned of Plaintiffs' bankruptcy petition, and that FMCC sought to determine whether Plaintiffs planned to keep their vehicle and continue to make payments, or whether Plaintiffs planned to surrender the vehicle. Plaintiffs' counsel returned the letter to FMCC indicating that Plaintiffs would continue to make payments.

The Bankruptcy Court issued an order of discharge for Plaintiffs on June 25, 1996. Plaintiffs continued to pay on the lease until July 1997, when Plaintiffs entered into another vehicle lease with Ford and paid a lump sum to satisfy their obligation under the initial lease.

Four years after receiving FMCC's letter, Plaintiffs brought this suit alleging that: (1) the letter was an invalid reaffirmation agreement and thus violated 11 U.S.C. § 524(c) (Compl. ¶¶ 56-57); (2) FMCC's acceptance and solicitation of Plaintiffs' payments after discharge violated the discharge injunction of 11 U.S.C. § 524(a) (Compl. ¶ 66); (3) the letter

violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362 (Compl. ¶¶ 61-62); and (4) FMCC's conduct constituted "unfair and unconscionable means to collect discharged debt" and therefore violated the FDCPA (Comp. ¶ 77). FMCC argues that, even if the letter was invalid under § 524(c), § 524 does not provide for a private right of action for its violation. Further, FMCC asserts that its acceptance of payments from Plaintiffs did not violate § 524(a). FMCC also contends that its letter did not violate § 362, and that Plaintiffs' claim under the FDCPA is time-barred.

**DISCUSSION**

For the purposes of the FMCC's Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the Plaintiff can prove no set of facts which would entitle him to relief." Id.; see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**A. Section 524**

Plaintiffs contend that FMCC violated the provisions of § 524 in several ways. First, they argue that FMCC's acceptance of payments after discharge violated the discharge injunction of § 524(a)(2). Plaintiffs also contend that FMCC sent payment reminders to them in violation of that discharge injunction. Finally, Plaintiffs assert that the letter FMCC sent

to Plaintiffs' attorney was an invalid reaffirmation agreement under § 524(c). FMCC responds that Plaintiffs' payments on the lease were voluntary, so that FMCC's acceptance of those payments did not violate the discharge injunction. FMCC also argues that § 524 does not contain a private right of action, so that, even if FMCC's conduct violated § 524(a)(2) and (c), Plaintiffs' recourse is recission of the allegedly invalid reaffirmation agreement and a motion for contempt in the Bankruptcy Court for the violation of the discharge injunction, not an action for damages.

In pertinent part, section 524(a) provides that a discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover, or offset any such debt as a personal liability of a debtor . . . ." 11 U.S.C. § 524(a)(2). In this case, if Plaintiffs had failed to make their lease payments after discharge, § 524(a) would have prohibited FMCC from pursuing an <u>in personam</u> action against Plaintiffs for the amounts due on the lease. However, in the event of a post-discharge default, nothing in § 524(a) would have prohibited FMCC from repossessing the vehicle or from instituting a replevin action for the vehicle.

Section 524(c) requires that a post-petition agreement to reaffirm an otherwise dischargeable debt is enforceable only if it contains certain language advising the debtor of her rights, and only if the agreement is filed with the Bankruptcy Court. 11 U.S.C. § 524(c)(1) - (3). It is undisputed that the letter FMCC sent to Plaintiffs' attorney did not comply with the requirements of § 524(c) because it did not contain all of the required

language and was not filed with the court.

1. Voluntary Payments

Section 524(f) provides that a debtor may voluntarily repay any debt. 11 U.S.C. § 524(f). FMCC contends that Plaintiffs' payments were voluntary within the meaning of § 524(f), and thus that FMCC did not violate the discharge injunction by continuing to accept the payments after discharge. Plaintiffs do not address the voluntariness of their payments. Instead, they argue that FMCC's letter to Plaintiffs' attorney and the monthly payment reminders FMCC sent to Plaintiffs after discharge violated the discharge injunction and the automatic stay. Implicit in Plaintiffs' argument is that FMCC's letter to Plaintiffs' attorney somehow coerced Plaintiffs' payments on the lease, making those payments involuntary.

The Bankruptcy Code allows debtors to dispose of their post-petition earnings in whatever manner they choose, including voluntary payments of debts otherwise dischargeable in bankruptcy. In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985). The issue, therefore, is whether Plaintiffs' payments to FMCC, either before or after discharge, were indeed voluntary. Here, it is clear that Plaintiffs' payments on the lease were voluntary. Plaintiffs listed the lease payment in their bankruptcy filings, and represented to the Bankruptcy Court that they would continue to make payments on the lease directly to FMCC. (Nuss Aff. Ex 1.) Moreover, Plaintiffs actually made a payment to FMCC after they filed for bankruptcy, but before FMCC sent the disputed letter. Plaintiffs' payments were therefore voluntary and were not "in any manner induced by the acts of the creditor." Van

Meter v. American State Bank, 89 B.R. 32, 34 (W.D. Ark. 1988). FMCC's acceptance of these payments did not violate either the automatic stay or the discharge injunction.

2. Private Right of Action

Plaintiffs contend that, whether or not their payments were voluntary, the payment reminders FMCC sent to them after discharge violated § 524(a)(2), and the letter FMCC sent to their attorney violated the reaffirmation agreement provisions in § 524(c). Plaintiffs seek damages for these alleged violations of § 524. FMCC argues that no private right of action can be implied from § 524, and thus that FMCC cannot be liable to Plaintiffs for any alleged violations of that section. According to FMCC, the remedy for a violation of § 524(a)(2)'s discharge injunction is a motion for contempt in the Bankruptcy Court, and the remedy for an invalid reaffirmation agreement is the unenforceability of that agreement. Plaintiffs contend that § 524 does contain an implied private right of action. Alternatively, Plaintiffs argue that this Court may enforce violations of § 524 through the broad remedial powers of § 105, which authorizes courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

To determine whether a private right of action should be implied in a statute that does not contain a private remedy provision, courts must evaluate four factors. These factors are: (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is any indication of congressional intent to create or deny a private remedy; (3) whether a private remedy is consistent with the underlying purpose of the statue;

and (4) whether the cause of action is one traditionally relegated to state law. Cort v. Ash, 422 U.S. 66, 78 (1975). In this case, there is little dispute that Plaintiffs, as bankruptcy debtors, are members of the class for whose benefit the statute was enacted, and that the cause of action they seek is not one traditionally relegated to state law. In any event, "[t]he most important inquiry is whether Congress intended to create the private remedy sought by the plaintiffs." Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979).

Whether § 524 implies a private right of action is the subject of much debate in the case law. The only Court of Appeals to address the issue directly has held that no private right of action exists. Pertuso v. Ford Motor Credit Corp., 233 F.3d 417, 422-23 (6th Cir. 2000).[1] An examination of the relevant case law and the legislative history, including the legislative history of the Bankruptcy Reform Act of 2000, which was enacted by Congress but vetoed by President Clinton in December 2000, shows that Congress did not intend to imply a private right of action in § 524.

In Pertuso, the Sixth Circuit was faced with a case nearly identical to the instant matter. The plaintiffs purchased a vehicle and obtained financing for that purchase through FMCC. 233 F.3d at 419-20. They filed for Chapter 7 bankruptcy, and submitted a "statement of intent" that they intended to reaffirm the debt to FMCC in order to keep the

---

[1] The First Circuit declined to determine whether § 524 contained a private right of action, but held that violations of § 524 may be remedied through the court's power under § 105. Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 444 (1st Cir. 2000). Bessette and § 105 will be discussed in more detail infra section A.3.

vehicle. Id. at 420. FMCC then sent the plaintiffs a letter seeking to obtain reaffirmation of the debt, which the plaintiffs and their bankruptcy attorney signed. Id. Two years later, the plaintiffs brought a purported class action against FMCC, alleging that FMCC violated §§ 524(a)(2), 524(c), and 362. Id.

The Sixth Circuit upheld the district court's dismissal of the complaint. The court of appeals found that Congress did not intend for a private right of action in § 524. The court noted that the purpose of § 524(a)(2) was to enjoin certain conduct, and that the remedy for the violation of an injunction is a contempt proceeding, not a lawsuit for damages. Id. at 421. Further, the court found that § 524(c) did not proscribe any conduct at all, it "merely sets forth the conditions under which a reaffirmation agreement is unenforceable." Id. The court therefore held that the language of § 524 did not evidence an intent by Congress to provide a private right of action. Id.

The court then examined the legislative history of § 524. As in this case, the plaintiffs in Pertuso cited the court to a section of the House Reports that they alleged supported their view that Congress intended a private right of action. See id. at 421-22 (quoting H.R. Rep. No 95-595, 95th Cong., 1st Sess. 163 (1977)). As the Pertuso court noted, however, the section that plaintiffs cited (and that Plaintiffs here cite) in support of their contention is from a version of the bill that was not enacted. Id. at 422. Thus, Plaintiffs' reliance on this legislative history is misplaced.

The Pertuso court also noted that, at the time of the decision, Congress was in the

process of debating a bankruptcy reform bill that would have amended § 524 to provide a private right of action. Since the Pertuso opinion was filed, Congress acted on the bankruptcy reform bill. The legislative history of that bill, the Bankruptcy Reform Act of 2000, shows that Congress did not intend § 524 to imply a private right of action.

The precursor to the Bankruptcy Reform Act of 2000 was introduced in the House of Representatives by Representative Gekas (R-Pennsylvania) in 1999. As introduced, H.R. 833 contained an explicit private right of action: "An individual who is injured by the willful failure of a creditor to comply with the requirements for a reaffirmation agreement . . . or by any willful violation of the injunction under subsection (a)(2), shall be entitled to recover-- (A) the greater of-- (i) the amount of actual damages; or (ii) $1,000; and (B) costs and attorneys' fees." H.R. 833 § 114(j)(1), 106th Cong., 1st Sess. (1999).[2] The bill contained this private right of action when it was sent to the Senate for consideration. However, as reported by the Senate Judiciary Committee, the successor to H.R. 833, S. 625, did not contain a private right of action for violations of § 524. As enacted, the Bankruptcy Reform Act of 2000 contained no mention of the private right of action from H.R. 833. This statute was vetoed by President Clinton on December 19, 2000, for reasons unrelated to the issue of a private right of action.

The fact that the Senate version of the bill removed the private right of action from

---

[2] It is interesting to note that H.R. 833 also contained a provision that prohibited the use of the class action mechanism to seek redress for violations of the reaffirmation and automatic stay provisions. H.R. 833 § 144(j)(2), 106th Cong., 1st Sess. (1999).

the House bill is instructive. Clearly, the Senate did not wish to create such a right, and the House acquiesced to the Senate on this issue. Moreover, the fact that the House found it necessary to include a private right of action in § 524 indicates that it believed that no private right of action under this section existed previously. The Court finds that Congress did not intend to confer a private right of action in § 524.

Even if Plaintiffs are correct that a private right of action exists under § 524, however, it is difficult to determine what harm Plaintiffs have suffered as a result of FMCC's violations of this section, and therefore what remedy Plaintiffs would be entitled to receive. With or without the disputed letter, Plaintiffs were required to continue to make their lease payments to FMCC. Had Plaintiffs stopped making those payments, FMCC could have repossessed the vehicle. Plaintiffs' decision to continue to pay was not coerced, and in fact is the only logical decision assuming Plaintiffs wished to keep possession of the vehicle. Plaintiffs have suffered no harm.

The Court acknowledges that FMCC violated the law. The letter FMCC sent to Plaintiffs' attorney did not comply with the requirements for reaffirmation agreements under § 524(c). In this case, Plaintiffs suffered no harm as a result of that violation, and there is no remedy. However, the Court reminds FMCC that it is obligated to comply with the law. Moreover, compliance with the requirements of § 524(c) is not onerous; indeed, the section clearly spells out what must be included in reaffirmation agreements and there is no fee for filing such agreements with the Bankruptcy Court. In a different situation, a court might not

look as kindly on FMCC's (or another creditor's) knowing and seemingly intentional violation of the law in this regard.

3. Section 105

Section 105 of the Bankruptcy Code provides that "[t]he court may issue any order, proccss, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. According to Plaintiffs, § 105 gives this Court the power to remedy violations of § 524.

At least one Court of Appeals agrees with Plaintiffs' position. In Bessette v. Avco Financial Services, Inc., 230 F.3d 439 (1st Cir. 2000), the First Circuit held that § 105 empowers either the Bankruptcy Court or the District Court to hold a party in contempt or to order damages for the violation of the discharge injunction of § 524(a). 230 F.3d at 445, 446. The Bessette court recognized, however, that an order of contempt or damages is not automatic, but depends on the merits of the case. Id. at 445. In this case, the Court has determined that Plaintiffs have suffered no harm from the alleged violations of the discharge injunction. Therefore, even if the Court could remedy the alleged violations of § 524 through § 105, the merits of this case do not require a contempt order or the award of damages.

Plaintiffs have failed to state a claim for a violation of § 524, and this claim must be dismissed.

**B. Section 362**

Plaintiffs contend that FMCC's letter to them violated the automatic stay provision of 11 U.S.C. § 362(a)(6), that such violation was willful, and that they are therefore entitled to actual damages, attorney's fees, and punitive damages under § 362(h). (Compl. ¶¶ 59-63.) Section 362(a)(6) provides that a bankruptcy petition operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy petition]." Whereas § 524(a) enjoins certain acts to collect on debt after discharge, § 362 temporarily stays such acts between the filing of the bankruptcy petition and the discharge.

According to Plaintiffs, § 362(a)(6) prohibits all contact between a creditor and a bankruptcy debtor. Plaintiffs' interpretation of § 362 fails to recognize that some post-petition contact between a creditor and a debtor is authorized and even favored by other provisions of the Bankruptcy Code. As FMCC points out, reading § 362(a)(6) to prohibit all contact would render meaningless § 524(c), which explicitly allows a creditor and a debtor to enter into post-petition reaffirmation agreements. The case law makes clear that § 362(a)(6) is intended to prevent a creditor from harassing a debtor into paying pre-petition debt. See Pertuso, 233 F.3d at 423 ("Something more than mere contact must be alleged in order to state a claim under § 362."). The section cannot be interpreted to prohibit the type of conduct at issue here, where FMCC contacted Plaintiffs' bankruptcy attorney, not Plaintiffs directly, and where there is no evidence of any harassing conduct. As the Eighth

Circuit stated when faced with similar circumstances, "th[e] letter is not an action to collect the debt in violation of the stay; instead it is an attempt to give the debtor an opportunity to reaffirm his loan and thereby possibly to keep the property, should he so choose." United States v. Nelson, 969 F.2d 626, 630 (8th Cir. 1992). Plaintiffs' claim under § 362 fails as a matter of law.

### C. Fair Debt Collection Practices Act

The FDCPA's statute of limitations provides that "[a]n action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). FMCC argues that Plaintiffs' claims arise out of alleged violations of the FDCPA that occurred, at the latest, in July 1997. Plaintiffs claim that FMCC's violation of the FDCPA is ongoing, because they contend that FMCC's rollover of mileage surcharges and other costs from the first vehicle lease into the second vehicle lease constitutes continued demand for payments on a debt that was discharged by the Bankruptcy Court.

Plaintiffs' argument is unavailing. Plaintiffs voluntarily entered into a new lease financed by FMCC, and cannot now complain that some charges associated with that new lease are in fact discharged debt for which they are not responsible. Taking Plaintiffs' allegations as true, the last conduct that allegedly violated the FDCPA occurred in July 1997, when Plaintiffs terminated the original lease. Plaintiffs were required by the FDCPA to bring their claims within one year from that date. The instant Complaint was not filed until June

2000. Plaintiffs' FDCPA claims are untimely and must be dismissed.

**CONCLUSION**

Plaintiffs have failed to state any claims upon which relief can be granted. Therefore, under Fed. R. Civ. P. 12(b)(6), Plaintiffs claims must be dismissed.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Clerk Doc. No. 16) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 19, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: JAN 19 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995